## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

HIGH PEAK PARTNERS, LLC, *et al.*,          )
                                            )
                Plaintiffs,                 )
                                            )
v.                                          )          Case No. 3:07CV757–HEH
                                            )
BOARD OF SUPERVISORS OF                     )
PRINCE GEORGE COUNTY,                       )
VIRGINIA, *et al.*,                         )
                                            )
                Defendants.                 )

## MEMORANDUM OPINION
### (Granting-in-Part and Denying-in-Part Defendants' Motions to Dismiss)

This is a civil rights action brought by two real estate developers against the
County of Prince George, its Board of Supervisors, and the County Engineer for an
assortment of constitutional violations, along with a pendent claim under state law. The
matter is before the Court on the defendants' motions to dismiss on various grounds.
Both sides have filed extensive memoranda of law supporting their respective positions.
On April 8, 2008, the Court heard oral argument. For the reasons stated below, the
defendants' motions will be granted-in-part and denied-in-part.

The dispute underlying this lawsuit arises from the plaintiffs' attempt to develop a
residential subdivision, known as the Meadows, in Prince George County, Virginia. As
envisioned, the Meadows will consist of six sections with 387 homes, with a projected
completion date of late 2011. High Peak Partners, LLC ("High Peak") intends to develop
approximately 53 acres in Section I for the purpose of building 81 houses. Plaintiff

Dickens Creek Siteworks, Inc. ("Dickens Creek") intends to perform the sitework for Sections II through VI.

As a prerequisite to the development of a subdivision in Prince George County ("the County"), a developer must build a public water system for the lots being improved. Prince George County Code Section 82-74 requires all new housing developments to include a public water system. Prior to constructing the necessary water system, a developer must enter into a contract with the County for the provision of water service. (County Ordinance § 82-77.) Because the installation of a public water system requires an extension to the County water line, it requires a contract with the County and is "subject to approval by the Board of Supervisors." (County Ordinance § 82-41(b).) Upon completion of the public water system, the developer is required to convey this system to the County. (County Ordinance § 82-74.) Furthermore, the extension of the County water line, which must be built at the developer's own expense, must also be turned over to the County upon completion. (County Ordinance § 82-72(a).)

Under the governing ordinance, the developer is responsible for constructing the basic infrastructure for the project, namely the public water system. In some instances, this involves building an extension from the County water line to the development. The cost of actually connecting the water line to the individual houses is typically defrayed by the builder. These individual connections remain the responsibility of the homeowner and are not turned over to the County. Generally, the County charges a connection fee

2

whenever a County water line is constructed within 200 feet of a house. (County Ordinance §§ 82-31, 82-106, 82-261.) The ordinary charge for a single family house is $3,000.00 or $1,320.00 if paid within 60 days. (County Ordinance § 82-261.) This charge is also mandatorily levied on homeowners outside a new development who are situated within 200 feet of the County water line as extended by a developer. These homeowners are required by Section 82-106 to pay the $3,000.00 connection fee even if they choose not to physically connect to the County water supply.

Section 82-73 of the County Ordinance also provides for certain reimbursements to developers who are required to extend the County water line. That ordinance provides, in pertinent part, that "for existing or newly constructed uses, including new developments, connected directly to an offsite water extension constructed at a developer's expense, the county shall reimburse the developer an amount equal to one-half the connection charges received by the county . . . ." Therefore, a developer is entitled to partial reimbursement for the extension of the County water line when a homeowner outside the boundaries of the development pays the individual connection fee to the County.

The central dispute in this case arose in July 2005 when High Peak attempted to negotiate an agreement with the County to build the public water system necessary for the development of Section I of the subdivision. According to the Complaint, on July 18, 2005, Defendant Stephen E. McBride ("McBride"), the utilities director of Prince George County (actually the County Engineer), sent a proposed water contract to High Peak.

3

High Peak signed and returned the agreement as drafted. It is conceded that McBride never submitted this agreement to the County Board of Supervisors ("the Board") for consideration. Instead, McBride sent High Peak a second draft of the agreement, which contained additional language requiring payment of connection fees for each lot in the Meadows. High Peak, presumably an experienced real estate developer, signed without reading the second draft agreement and returned it to McBride in August 2005. McBride submitted the second draft of the water agreement to the Board in January 2006. The agreement, however, was not approved.

The Board deferred action on High Peak's water agreement and directed McBride to inquire if High Peak would be willing to contribute additional water connection fees. At the Board's behest, McBride asked High Peak if it "would like to contribute to the availability fees which the affected land owners would be subject to when your water line is extended along Sandy Ridge Road." (Compl. Exh. 1.) In effect, McBride inquired whether High Peak would be willing to contribute to the water connection charge for land owners whose property was situated outside of the Meadows, but because of its proximity to the new water extension line, would be subject to a connection charge. McBride also asked High Peak if it would be willing to waive its right of reimbursement, to which it is entitled under County Ordinance § 82-73.

High Peak signed the revised water agreement, agreed to pay the additional connection charges, and waived its reimbursement rights. The final version of the

4

agreement was approved by the Board in January 2006. The total time required for approval of the water agreement was five and one-half months.

The other plaintiff in this case, Dickens Creek, is in the process of developing Section II of the Meadows Subdivision. According to the Complaint, Dickens Creek submitted plans for its proposed development in January 2007. Although the County has responded with comments, the plans have not been approved. Furthermore, the County has apparently declined to negotiate a water agreement with Dickens Creek for Section II until the pending litigation concerning the interpretation and application of relevant County ordinances is concluded.[1] By letter dated November 16, 2007, the County informed Dickens Creek that it would issue land disturbance permits enabling site development while High Peak's lawsuit was pending, but would not finalize the water agreements until the dispute over interpretation of the County ordinances was resolved. (Compl. Exh. 3.) Dickens Creek subsequently filed a complaint in Prince George County Circuit Court seeking a judicial mandate directing approval of its construction plans.

Dissatisfied with the pace of the process for approval of the water agreement, and the concessions required, Plaintiffs filed this civil rights action against Prince George County, its Board of Supervisors, and Stephen E. McBride, the County Engineer.

---

[1]In November 2007, High Peak apparently filed a lawsuit in Prince George County Circuit Court, challenging the County's interpretation of its ordinances relating to water agreements. That case has reportedly been non-suited, and this lawsuit immediately followed.

McBride is sued in both his individual and official capacity.[2]  Although the allegations in

the Complaint flow from the course of negotiations over two water connection

agreements, Plaintiffs have finely ground the intervening events into a fourteen-count

complaint.  High Peak contends that the failure of McBride and the County to timely

process its fully executed water agreement, and its demand that High Peak waive its right

to reimbursement for collection fees, violated High Peak's procedural and substantive due

process rights.  High Peak further maintains that its right to equal protection under the law

was violated because no other developer has been subjected to similar delays or required

to make comparable concessions.  High Peak also alleges that McBride and the Board

conspired to violate its civil rights.  High Peak further asserts a claim under state law for

reimbursement of the connection fees.

Dickens Creek similarly alleges due process and equal protection violations

resulting from the County's failure to timely approve its water agreement and plan of

development.  Lastly, both Plaintiffs seek declaratory judgment guiding the future

relations of the parties, defining High Peak's right to reimbursement for certain

connection fees, and declaring the County's actions to be unconstitutional.

Based on the County's five and one-half month delay in approving its water

agreement and request for additional concessions, High Peak seeks compensatory

---

[2]The Complaint names as defendants Prince George County, the Board of Supervisors and McBride in his official capacity.  Although each are named defendants, in practical effect, there is only one defendant in this lawsuit in an official capacity, Prince George County.

6

damages of at least $515,880.00, plus interest, and punitive damages against McBride of at least $200,000.00. Dickens Creek requests compensatory damages against the County of at least $200,000.00 for delaying approval of its water agreement and construction plans pending the outcome of this litigation.

The defendants have filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that the Complaint fails to state a claim for which relief can be granted. Both defendants assert that Plaintiffs' constitutional claims fail for want of an affected property interest and that any delay in processing Plaintiffs' requests was rationally based and not attributable to discrimination. Plaintiffs further maintain that the conspiracy count is barred by the intra-corporate conspiracy doctrine. In addition, McBride asserts that he is shielded by qualified immunity from liability and trial. Lastly, the County urges the Court to decline subject matter jurisdiction based on Fed. R. Civ. P. 12(b)(1) under the abstention doctrine articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098 (1943).

The Court will first address Defendants' issues in bar. The defendants challenge Count IX of the Complaint, which alleges a conspiracy to violate the civil rights of the plaintiffs, as barred by the intra-corporate conspiracy doctrine. The intra-corporate conspiracy doctrine evolved from the case of *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952) *cert. denied*, 345 U.S. 925, 73 S. Ct. 783 (1953). In announcing the doctrine, the Fifth Circuit observed:

7

> It is basic in the law of conspiracy that you must have two
> persons or entities to have a conspiracy. A corporation cannot
> conspire with itself any more than a private individual can,
> and it is the general rule that the acts of the agent are the acts
> of the corporation.

200 F.2d at 914.

In the intervening years, the doctrine has been applied in the civil rights area to include "officials of a public body who act within the scope of their employment." *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (citations omitted). *See also Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972). The intra-corporate conspiracy doctrine was recognized and adopted by the Fourth Circuit in *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974).

In the immediate case, viewing the allegations in the light most favorable to Plaintiffs, the Complaint reflects that the County, the members of its Board, and McBride, the County Engineer, were all acting with an alleged unity of purpose, namely, to unlawfully delay approval of Plaintiffs' water agreement and construction plans, and unlawfully require High Peak to waive its entitlement to certain reimbursement fees. The nucleus of the conspiracy is the agreement or tacit understanding among County officials to violate the civil rights of the plaintiffs.

Plaintiffs counter that McBride's actions in delaying presentation of the water agreement contract to the Board exceeded the bounds of his authority, which is a recognized exception to the intra-corporate conspiracy doctrine. *Buschi*, 775 F.2d at

8

1252. The office of this exception is obvious. If corporate or municipal agents are acting in league with each other to engage in activity contrary to the wishes, directive, or policy of the corporate entity, they are acting as individuals, not as agents of that corporation or municipality, and are therefore not combining to achieve a corporate or municipal objective. But that is not what is alleged here. In the immediate case, the plaintiffs contend that McBride and the County were working together to deny the plaintiffs' due process and equal protection under the law by deliberately and maliciously delaying county action. The conspiracy count, as pled, is therefore barred by the doctrine of intra-corporate immunity. Defendants' motions to dismiss with respect to Count IX will be granted.

Progressing next to the County's argument that Plaintiffs' civil rights claims are barred by the statute of limitation, the County is correct that actions brought under 42 U.S.C. § 1983 are governed by a two-year statute of limitations which is borrowed from the law of the Commonwealth of Virginia. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). Under § 1983 jurisprudence, the statute of limitations' clock is triggered only at the point the state fails to provide the due process to which a plaintiff is entitled. *Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). Within the continuum of events pled in the Complaint, it is difficult in the present state of the record to determine with any degree of certainty what point in time Plaintiffs were allegedly deprived of their constitutional rights. Therefore, the County's motion to

9

dismiss on this ground will be denied without prejudice and may be renewed at a later point after the record has been fully developed.

On another front, the County argues that the Tax Injunction Act divests this Court of subject matter jurisdiction. The text of the Tax Injunction Act states, "the district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The County argues that the fees at issue are collected pursuant to an enactment by a government body as general revenue for the general welfare of the community. Defendants respond that the fees imposed under the water service ordinance are intended to defray the expense of water hookups in the affected area, and further, that Plaintiffs do not seek to enjoin, suspend, or restrain the exacting of any tax.

Plaintiffs in this case do not ask this Court to enjoin, suspend, or restrain the assessment of any tax or levy. They contend they are entitled to reimbursement for a regulatory fee unlawfully included in a water agreement contract. Their claim is in no way intended to disrupt county finances. *Hibbs v. Winn*, 542 U.S. 88, 104, 124 S. Ct. 2276, 2287 (2004). The fees in contention here are part of a regulatory scheme to underwrite the cost of providing water to citizens in certain subdivisions. It is not a general revenue raising provision. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 189 (4th Cir. 2007). Therefore, the Court is of the opinion that the Tax Injunction

10

Act does not preclude the relief sought by Plaintiffs in this case.

The County next urges the Court to decline subject matter jurisdiction under the abstention doctrine articulated in *Burford*. The *Burford* abstention doctrine allows federal district courts sitting in equity, in their discretion, to decline jurisdiction in certain circumstances to show proper regard for a state government's domestic policy. 319 U.S. at 317–18. Subsequent decisions interpreting *Burford* have emphasized that a critical element in exercising discretion is whether the district court's actions would interfere with the proceedings or orders of state administrative agencies when there are difficult questions of state law bearing on problems of substantial public import whose importance transcends the results in the case then at bar. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S. Ct. 2506, 2514 (1989). The court in *New Orleans* cautioned that abstention is appropriate only where there is a danger that federal court review would "disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" *Id.* at 362 (citations omitted).

Courts applying *Burford* abstention have frequently restated that it is limited to cases where the district court is sitting in equity. Counts I through XIII of the immediate Complaint also seek monetary damages. Therefore, the Court will neither invoke the *Burford* abstention doctrine nor indefinitely stay these proceedings. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728–31, 116 S. Ct. 1712, 1726–27 (1996); *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 282 (4th Cir.

1988).

The Court is of the opinion, however, that Count XIV, which requests declaratory judgment, has significant public policy implications. In Count XIV, Plaintiffs urge this Court to define the legal relationships of the parties and, in essence, fashion the procedural requirements for processing water agreement contracts in Prince George County. In paragraph # 328 of Count XIV, Plaintiffs assert, "a declaration of rights is needed to guide the future conduct of the parties, because future applications for reimbursement, future water agreements, and future plan submittals regarding others of the planned several hundred additional lots will continue to be at issue . . . ." For this Court to prescribe the procedures that Prince George County should follow in processing water agreement contracts, would necessarily trespass on the sovereignty of that County's government. Any challenge to the regulatory policy of the County should be addressed in the courts of the Commonwealth of Virginia and not dictated by a federal district court. Therefore, this Court will abstain with respect to those elements of Count XIV seeking intervention in County public policy.

On the other hand, Count XIV also asks this Court to declare certain allegedly illegal acts by the County to be unconstitutional. This request appears at this stage to be an appropriate exercise of federal jurisdiction because it does not involve interpretation of questions of state law bearing on public policy. The Court will therefore assume jurisdiction over those portions of Count XIV pertaining to the constitutionality of the

County's actions.

The final issue in bar is McBride's claim of qualified immunity. A government official is entitled to qualified immunity from civil liability so long as his or her discretionary conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity is an immunity from suit as well as from liability. *Id.* Government officials are immune from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 113 S. Ct. 1048 (1993).

The analytical framework for determining whether a public official performing a discretionary function is entitled to qualified immunity is well-established. First, the court must determine whether the facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. If there is no constitutional right violated, the court's inquiry ends there.[3] If a constitutional violation is shown, the next sequential step is to determine whether the right was clearly established—that is whether it would be clear to a reasonable public official that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194,

---

[3]Construed in the light most favorable to Plaintiffs and assuming Plaintiffs can prove their allegations, the equal protection counts arguably state a constitutional claim.

201–02 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred. *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993). A critical facet of the analytical process is to determine whether the government official's conduct was objectively reasonable. *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir. 1995) (en banc), *cert. denied*, 116 S. Ct. 530. This typically requires an examination of the factual context underlying the alleged constitutional violation. This aspect of the injury must be undertaken in the specific context of the case. *Saucier*, 533 at 201. Unfortunately, this factual context is difficult to glean from the face of the Complaint alone. The Fourth Circuit has therefore counseled trial courts to resolve qualified immunity questions at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558–59 (4th Cir. 2005). This Court will follow that advice and deny McBride's claim of qualified immunity with leave to renew at a later stage.

Turning next to the due process claims, Defendants contend that even when viewed in the light most favorable to Plaintiffs, the Complaint fails, as a matter of law, to allege a constitutionally-protected property interest which is critical to stating a viable due process claim.

For the convenience of the Court, Plaintiffs in their response to Defendants'

14

Motions to Dismiss, succinctly delineate the property rights they believe are at issue in this case: (1) an interest under Virginia law that a fully negotiated water agreement must be submitted to the Board as agreed for approval or rejected by the Board; (2) an interest under Virginia law that a fully negotiated water agreement or waste water agreement must be submitted within a reasonable time to the Board; (3) an interest in the costs of construction of additional equipment outside the development in addition to that shown on the original plans; (4) an interest in reimbursement of a share of availability or connection fees paid outside the Meadows to the water extension it built to serve its development by operation of the County Code; (5) an interest under Virginia law in reimbursement of a share of availability or connection fees paid outside the Meadows by operation of the County Code; and (6) an interest under Virginia law in having complete otherwise acceptable plans timely and formally approved by the Board.

Counts I, III, V, VII, X and XII appear to allege a combination of substantive and procedural due process claims. While each species of due process has distinct elements of proof, each have a common requirement that Plaintiffs demonstrate a property interest. *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 826–27 (4th Cir. 1995). Neither the Civil Rights Act nor the Fourteenth Amendment creates a property interest. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have

15

more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

As the United States Court of Appeals for the Fourth Circuit pointed out in *Gardner v. City of Baltimore Mayor & City Council*, "whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest." 969 F.2d 63, 68 (4th Cir. 1992). Under this standard, a cognizable property interest exists "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a prior application is virtually assured." *Id.* (*citing RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989)). "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *Id.* Even proof of a consistent government practice of conferring a benefit is insufficient to create a vested liberty or property interest. *Mallette v. Arlington County Employees Supplemental Sys. II*, 91 F.3d 630, 635 (4th Cir. 1996). To create a property interest, the benefit sought must be an entitlement dictated by statute which acts to limit meaningfully the discretion of the decision makers. *Smith v. Ashcroft*, 295 F.3d 425, 429–30 (4th Cir. 2002).

16

As the Fourth Circuit further noted, "[t]he standard [for due process claims] represents a sensitive recognition that decisions on matters of local concern should ordinarily be made by those whom local residents select to represent them in municipal government—not by federal courts." *Gardner*, 969 F.2d at 69.

Distilled to its essence, the plaintiffs allege that McBride intentionally withheld submission of a fully negotiated water agreement from the Board in order to extract additional concessions not required by the original plans, state statute, or county ordinance. Dickens Creek further maintains that McBride and the Board are intentionally withholding approval of its construction plan pending the outcome of this litigation. As mentioned above, the linchpin of any due process claim is the existence of a legally cognizable property interest. In support of their claim that the interests at issue are constitutionally protected, Plaintiffs rely on *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983). In *Scott*, a developer made application for a building permit for a multi-family low income housing complex. There was no dispute that the developer's application facially met every requirement for issuance. However, when opposition arose to minority low income housing in that area, county council froze the issuance of permits. Ultimately, a state court issued an order requiring the permit to be issued. The Fourth Circuit held that the developer had a cognizable property interest in the permit. The court determined that the county was required by state law to issue a building "permit upon presentation of an application and plans showing a use expressly permitted under the

17

then-current zoning ordinance." *Id.* at 1418–19. "In *Scott*, therefore, municipal authorities lacked all discretion to deny issuance of the permit and, as a result, the developer possessed a legitimate claim of entitlement under the standard we apply here." *Gardner*, 969 F.2d at 69.

By contrast, the Fourth Circuit found no due process violation in the City of Baltimore's refusal to approve a developer's public works agreement covering all streets and public utilities in the planned subdivision. In *Gardner*, the court held that state and municipal law afforded the City discretion in the issuance of the public works agreements and, therefore, plaintiffs did not possess a proprietary interest within the cognizance of the Fourteenth Amendment. *Id.* Similarly, in *United Land Corp. v. Clarke*, the court held that the failure of county authorities to issue a soil erosion permit did not deprive the developer of due process because those authorities had discretion under county law to refuse the permit. 613 F.2d 497, 501 (4th Cir. 1980).

The provision of water service in Prince George County is governed by Article II, Division I of the County Ordinance, Sections 82-31, *et seq.* The County code requires that all new developments must construct a public water system. Before commencing construction of any water system, a developer must enter into a contract with the County setting forth the terms and conditions under which the construction will be performed and the system conveyed to the County for operation and maintenance. (County Ordinance § 82-77.) Prior to actual construction, a developer must obtain a written permit signed by

18

the County Engineer. (County Ordinance § 82-78.) All contracts for proposed water line extensions must be approved by the Board. (County Ordinance § 82-41(b).) Nowhere in the County water service ordinance is there any *requirement* that a contract or permit *must* be approved by either the County Engineer or the Board. Furthermore, the ordinance specifies no time limitations within which the County Engineer or Board must act upon a contract, application, or permit. These actions are clearly discretionary.

A county's unreasonable delay in approving an application permit or contract, or indeed its categorical refusal to act at all, may well be actionable under Virginia state law. A violation of state or local law, however, does not necessarily translate into a federal constitutional violation. *Altman v. City of High Point*, 330 F.3d 194, 208 (4th Cir. 2003). To conclude that "every agency decision reversed as 'arbitrary and capricious' under state or federal administrative law rises to the level of a constitutional claim would distort the substantive due process doctrine." *Sylvia Dev. Corp.*, 48 F.3d at 829 n.7.

The County's request that High Peak underwrite the cost of water line connections for homeowners outside the immediate development affected by the water system extension adds little to Plaintiffs' position.[4] High Peak does not contend that the County threatened to reject the water agreement if they refused to pay the hook-up fees. The County merely delayed approval to inquire if High Peak would volunteer to pay the costs.

---

[4] The Board's concern is understandable. If High Peak had not agreed to defray the mandatory hook-up fee, a group of County citizens would each be required to pay a $3,000.00 water connection charge simply to facilitate High Peak's development of the adjacent subdivision.

19

High Peak agreed without apparent protest.

The Court is therefore of the opinion that the Complaint fails to meet the critical foundational requirement of pleading a cognizable property interest. Plaintiffs therefore fail to state a procedural or substantive due process claim in Counts I, III, V, VII, X, and XII, and those counts will be dismissed.

High Peak and Dickens Creek turn next to the equal protection clause of the Fourteenth Amendment and collectively assert an additional five claims against the defendants. In Counts II and IV, High Peak alleges that McBride and the County violated its right to equal protection when McBride failed to submit the first freshwater agreement to the Board for approval. Counts VI and VIII allege that McBride and the County violated the developer's right to equal protection by requiring High Peak to make certain concessions in the freshwater agreement and by delaying submission of the agreement to the Board for five months. Count XIII is a claim by Dickens Creek that the County violated its equal protection rights by withholding approval of its freshwater agreement and site plans. Defendants contend that all five counts should be dismissed for failure to state a claim.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Twp. of Wakefield,*

20

247 U.S. 350, 352 (1918).  In essence, the equal protection clause "keeps governmental

decision makers from treating differently persons who are in all relevant respects alike."

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Quite apart from the landmark equal

protection cases involving large-scale classifications, the Supreme Court has also

recognized that a valid equal protection claim can be "brought by a 'class of one,' where

the plaintiff alleges that she has been intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment." *Vill.*

*of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  This is the type of equal protection

claim that High Peak and Dickens Creek have articulated in Counts II, IV, VI, VIII, and

XIII.

To state an equal protection claim, High Peak and Dickens Creek must allege that

1) they have been treated differently than others with whom they are similarly situated,

and 2) the unequal treatment was the product of intentional or purposeful discrimination.

*Morrison v. Garraghty*, 239 F.3d 648, 653 (4th Cir. 2001).  In Count II, High Peak asserts

that other developers similarly situated had their water agreements forwarded to the

Board for approval upon execution and that McBride's decision not to submit the first

freshwater agreement was "intentional," "malicious," and without "legitimate

justification."  Counts IV, VI, VIII, and XIII contain identically worded allegations.

Those counts all claim McBride and the County subjected High Peak or Dickens Creek to

various disparate treatment which was fueled by malicious motives.  The developers have

21

therefore alleged sufficient facts in Counts II, IV, VIII, and XIII to state claims under the equal protection clause.

High Peak and Dickens Creek have not specifically pled which similarly situated parties were treated differently by McBride or the County. Nor does their Complaint provide a glimpse of any evidence to support the allegation that McBride or the Board's actions were improperly motivated. They need not do so, however, at this stage of the litigation. *See, e.g., Willis v. Town of Marshall*, 426 F.3d 251, 264-64 (4th Cir. 2005) (overturning summary judgment award before discovery commenced because district court did not provide plaintiff an opportunity to show that others similar situated were treated differently); *Syngenta Crop Protection, Inc. v. EPA*, 444 F. Supp. 2d 435, 449 (M.D.N.C. 2006).

McBride and the County point out in their briefs that assuming High Peak and Dickens Creek could show they were treated differently than similarly situated parties, the County's actions would nonetheless be subject to mere rational basis review. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Defendants are correct. When a local government acts in the economic realm and does not burden a fundamental freedom, there is a "'strong presumption of validity" and the governmental action must be sustained "so long as it bears a rational relation to some legitimate end." *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). High Peak and Dickens Creek bear the heavy burden going forward of "negating every conceivable

22

basis" which might have justified the way in which McBride and the Board handled the developers' freshwater agreements and permit applications. *FCC v. Beach Commc'n*, 508 U.S. 307, 315 (1993).

The County has already stated in their briefs that the Board directed McBride to renegotiate the freshwater agreements out of concern for the connection fees other county residents would be forced to pay as a result of High Peak's extension of the municipal water supply. In light of this plausible assertion, Plaintiffs are left with a tough task. High Peak and Dickens Creek, however, benefit from a more tempered standard of review at this stage of the litigation.[5] The Court finds they have sufficiently pled equal protection claims in Counts II, IV, VI, VIII, and XIII for which relief could be granted by this Court. Defendants' motions to dismiss the equal protection claims will be denied.

In the final analysis, the Court will grant Defendants' Motions to Dismiss Counts I, III, V, VII, X and XII (Due Process Claims) and Count IX (Conspiracy to Violate Civil Rights), and deny Defendants' Motions to Dismiss Counts II, IV, VI, VIII and XIII (Equal Protection Claims), and Count XI (Reimbursement of Water Connection Fees). Count XIV (Declaratory Judgment) is granted-in-part and denied-in-part.

---

[5]In deciding a motion to dismiss filed under Rule 12(b)(6), the Court is bound by the face of the complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.) *cert. denied*, 114 S. Ct. 93 (1993).

23

An appropriate order will accompany this Memorandum Opinion.

                                    /s/
                         Henry E. Hudson
                         United States District Judge

Date: April 14, 2008
Richmond, VA